Would the lawyers who are going to address the court please each stand and just tell us your names? As you both know, you each have 20 minutes. Would you like to save some of that 20 minutes for rebuttal? Yes, just a few minutes. Okay, like three minutes? That would be great. And you do not have to use your whole 20 minutes, but you do have to keep your voice up nice and loud because there are people in the back who want to hear what you're saying. Whenever you're ready, Ms. Rubio. Good afternoon, Your Honors. May it please the Court. This case involves a novel counsel of choice issue. The question here is whether an attorney's outright misrepresentation to his client about the outcome of ARDC proceedings against him could deny a defendant his constitutional right to counsel of choice. The question additionally involves whether that and other conduct constituted ineffective assistance of counsel. Just before Fabian Hall's bench trial began, his defense attorney, David Wiener, stated on the record that he had been investigated by the ARDC and cleared of all charges but placed on probation. In fact, the ARDC proceedings went way beyond mere investigation, and Mr. Wiener was never cleared of anything. In fact, just weeks prior, he had consented to disciplinary measures taken by the ARDC involving acts of dishonesty and misconduct in four criminal defendants' cases. Where does this, if this were a rule, where does it stop? Where does the rule that if a lawyer misrepresents something about himself or herself to their client, that deprives the client of the right to choose counsel? Where does that stop? If I say I went to Yale and I really went to U of I, where does it stop? Well, I think that where it starts is most important. In this case, it started because there was an affirmative misrepresentation on the record. It was recorded. It was to the court. And why does that change anything? If it was on the record, what does that change? Because we have proof in this record that an outright lie was made. But what is the proof of an outright lie that's not on the record? Well, there might be some discussion off the record about, for example, things involving puffery or, you know, promoting oneself without their capabilities, subjective considerations. I'm the best defense attorney you can find. That's a subjective kind of factor that maybe some defense attorneys would say to their clients. But the issue here is about the defendant's rights to counsel choice. And the information provided to him was misinformation when he was given that choice on the record before the court. So does it matter that it's on the record because you're really saying the judge has a responsibility here to do something? What are you saying? Well, we're saying that the import of it being on the record relates to this is a direct appeal and we're limited to the record. So we're looking at it on the record. Oh, okay. And also that was a distinguishing factor in the closest case we can, like I said, this is a novel issue, but one of the closest cases we could find is Graham. And Graham is instructive in relation to the misinformation being on the record. But didn't the court really say in Graham that the court has no obligation to ensure that the defendant has accurate information about his lawyer? No, I think that the Graham court's decision was really based on the information that was given to the defendant. What had happened in Graham was the defense counsel informed the court and the defendant that he had been having an ongoing fight with the ARDC, but it wasn't affecting his ability to represent his clients. And in that case, the trial court let the defense counsel and the defendant speak off the record, came back on the record, and then questioned the defendant multiple times about what he wanted to do. Did he want this attorney to continue to represent him? What was the fundamental reason why this should be disclosed? Because this information is pivotal in a defendant's constitutional right to counsel of choice. Relating, comparing to a waiver of effective assistance of counsel, that's a similar situation where a defendant can choose to be represented by someone who may have a conflict of interest as long as their waiver is knowing and voluntary. So does it depend on what the nature of the disclosure is? I would say so. I think that in this case, the disclosure, the misinformation was specifically about this defendant's ability to represent his clients. There's no way around the fact that he gave the wrong information about that. And that goes to two considerations. But he was still allowed to practice law. He was still allowed to practice law. The suspension was stayed pending probation, which he violated later. And is there any demonstration that had this defendant received 100 percent accurate information on the disclosure that something different would have happened? You mean outside of the conversation that was on the record? Right. I mean, don't you have to establish that, gee, if I would have known this, I would have done something else? It affected me adversely as opposed to my lawyer told me he's always on time for court, but I found out later he's late all the time. What difference does it make? Well, I have two responses to that. The first is that because this is a Sixth Amendment right to counsel of choice, it's a structural structure here. We understand it. That doesn't involve the prejudice component. But the second response is that the facts are the facts as the record stands. And the fact is he gave misinformation. He lied to the court and to the defendant. And so the defendant at that point, regardless of what was maybe said before that or after that, the defendant was provided with the wrong information that he needed to properly assess. One of the most important decisions a defendant has in his case is the choice of counsel. And that protection protects the defendant's rights to autonomy and his decision-making capabilities in a criminal defense trial against him. Let me go back to your conflict analogy, which I have a problem with. You have a right to conflict-free counsel. You can waive that right. Correct. You don't have a right to have a lawyer that's not on probation. In fact, lawyers on probation are entitled to practice law. They're allowed to. You don't have a right to have a lawyer not on probation. And we're not saying that Fabian did. But what we're saying is that Fabian didn't have all the facts. He didn't. I understand that. I understand. He had misinformation. I agree with you on that. I don't agree with you that that's not misinformation. If Mr. Weir had come before the court and said, I want to make everybody aware that I've been investigated by the ARDC and I have conceded to disciplinary proceedings as they relate to some other criminal defendants and I've been placed on probation. Do you still want me to represent you? We wouldn't be here right now. We'd be here at some other time. Exactly. But we wouldn't be making this structural error issue. I think you've already stated what the objective issue is here. He was actually suspended from the practice of law. That suspension was stayed in lieu of probation. Correct. That information was never disclosed. Correct. And I actually agree with you that I have some concerns. Yeah, and I think that that goes to, like I said, a defendant's constitutional right to properly assess and make decisions regarding his counsel of choice. In this case, how could we even – defense attorneys and all attorneys are officers of the court and they're given certain presumptions about their trustworthiness. And so in situations like this, how can we trust the truthfulness and veracity of defense counsel's answers to discovery or their zealousness or their advocacy skills when we know for a fact that the defense attorney himself lied to the court and lied to his own client. And so that's why it's important that these rights to autonomous decision-making about choice of counsel be honored in cases like this. I go back to my first question, which if you can't answer, that's fine. But where does that end? I mean, yes, clients should know, have accurate information about their lawyers. Absolutely. In a perfect world, they would. But how involved do we get in making sure that happens? Where does that start? I understand when you say it starts. Where does it end? Right. I think that it depends on every case. If it's a situation where a conversation occurred off the record, as an appellate attorney, I would certainly argue if it's contained in a post-conviction petition in an affidavit of some sort that the defendant provided to the trial court about, you know, it's sort of like I was promised by my defense counsel that my plea would be for 50 percent time instead of 100. That would be taken with post-conviction petition, and the truth of it would be assumed at the first stage, and we'd go through the whole appellate process. So I guess it depends on the procedural posture of the case and how the information is brought to this court. In this case, we only need to look at the direct appeal record for you to reach the issue. But if there are off-the-record conversations, then that would be something that could be taken care of in a post-conviction petition. Does that answer your question? Well, yes, and I think that kind of claim, I was promised this and I got that, would be analyzed under Strickland. And I guess part of my question is how would you analyze this claim that you're making if we don't accept your per se rule that you have a right, you know, how would you analyze this under Strickland? So under Strickland? Yes. Well, I think that we presented it as we thought we could with an unknowing and involuntary waiver of the effective assistance of counsel. By not providing Fabian with the correct information about Mr. Muir's qualifications and abilities to represent him and his status with the ARDC, he wasn't able to adequately assess whether he wanted to waive any potential ineffectiveness. That's because the attorney lied. That's because the attorney lied, correct. So it's a similar argument, but under the ineffectiveness structure. So it would be similar to, like I said before, a conflict of interest case where the defendant, if he wasn't apprised of the conflict appropriately, could not have effectively waived the conflict. And so it's a similar situation. This defendant wasn't able to adequately consider whether he wanted this attorney to represent him, knowing all the shortcomings he had, knowing all the disciplinary proceedings he faced, and wasn't able to do that knowing and voluntary waiver. Additionally, defense counsel then went on and provided an effective assistance by failing to impeach the state's only witness about a critical inculpatory statement that Fabian allegedly made. And then boasted that same witness's credibility in closing when he said that he was a truthful and candid person and then merely concluded that the state didn't prove Fabian guilty beyond a reasonable doubt. What was the impeaching omission? Well, the impeaching omission was that Officer Carlson testified about a statement that Fabian allegedly gave him, which was that he possessed the weapon and that he did so in order to protect himself from either side of this fight that Officer Carlson had testified to seeing. And then also that Fabian offered to the police to help them recover some additional weapon and ammunition off the street if they would let him go. And the state, in the arrest report that Officer Carlson signed off on, it only stated that Fabian told him that he possessed the weapon for protection. But the state utilized those extra details that he testified to in closing argument when they said, well, those details show that Officer Carlson's testimony was corroborated because it references this fight that broke out and Officer Carlson's description of the events is then corroborated. And it also shows the truth of Fabian's alleged statement because it provided extra details about offering to locate this weapon. So you're saying he was ineffective because he didn't impeach him through the omission of the AK-47 testimony. And the fight that broke out, yes. It wasn't in his police report. Those details were not in the police report, correct. It was impeachment evidence that was readily available to Mr. Weiner and yet he failed to use it. And this was the only piece of evidence that the state had to put a gun in Fabian's hand because the officer's description of his observations didn't put affirmatively a weapon in Fabian's hand. It was this statement. This was the only evidence. And in fact, strangely, during the post-trial hearing where they discussed defense counsel's strategy behind bolstering the testimony of this state's key witness, he said, well, he was obviously an honest person. And the trial court relied on that as trial strategy. But any competent defense attorney would be faced with this situation and the only piece of evidence was this officer's testimony about the defendant's statement, would not concede as such. And Mr. Weiner also mentioned at the post-trial hearing that he didn't talk to Fabian about a motion to suppress because he didn't make a statement implicating himself, which is completely incorrect. Not true. Did you press that on appeal as ineffective assistance, his failure to make a vial motion to suppress? No, we didn't raise that issue as a separate motion, as a separate issue. But we did point out that his testimony at the post-trial motion should not be relied on in finding that his strategy was sound. It has to be sound trial strategy, not just trial strategy. Right. And we're arguing that his failure to impeach this critical witness and his bolstering that witness's credibility resulted in ineffective assistance of counsel, which could have affected the result of this case, especially because that was the only state's evidence against Fabian. So for both reasons, this Court should reverse because of the structural error associated with the counsel of choice component of this case, but also that misinformation and then defense counsel's conduct constituted ineffective assistance of counsel. If there are no additional questions, we ask that this Court reverse Fabian Hall's conviction. Thank you. I'm allergic to heckling. Good afternoon, Your Honors. Counsel, I'm Assistant State's Attorney, Veronica Calderon-Meledia. May it please this Honorable Court. In essence, Defendant wants this Court to hold that his right to choice of counsel was violated by the attorney he hired. This is an expansion of the Sixth Amendment, which makes no sense. A Sixth Amendment violation of the right to choice of counsel typically deals with some outside interference that deprives the defendant of counsel of his choosing. For example, at the request of the prosecutor, a judge may improperly remove defense counsel due to an alleged conflict of interest or deny the substitution of counsel right before trial. Or deny continuances or all sorts of things that a judge is due to. Right, but here, there is no outside interference. David Wiener was defendant's choice of counsel even after Mr. Wiener revealed the results of his ARDC proceedings. So we don't have a situation. Did Wiener reveal the results of his ARDC? He was placed on probation. Defendant knew that he was placed on probation. He revealed some. Well, when he was examined, that's what he revealed. He candidly stated that I've been investigated with an ARDC. That's true. I was cleared of all charges. I was cleared of all charges. That was the judge who stated that. Okay, I believe that that refers to Supreme Court Rule 772's requirement that before an attorney can be placed on probation, he cannot be found guilty of any charges of disbarment. Okay. Right? And also, defendant's position that this is affirmatively misinformation is also limited on this record and assumes that Mr. Wiener and defendant did not have an outside, adequate conversation regarding his ARDC proceedings. So based on this record, it's conjecture. It wasn't litigated below. Not even post-trial counsel raised the issue. So this is limited, and it's really now that the record is insufficient to show that there wasn't a permitted misrepresentation. But at the end of the day, again, defendant chose his attorney, Mr. and Mr. Wiener, even despite the ARDC results. Defendants now have a theory that the right to choice of counsel was violated by the attorney he hired. Your Honor, it's not supported by any case. What if you chose a lawyer who was actually disbarred? Well, then he doesn't have counsel. So that would be like a comic situation. But here, defendant's novel theory isn't supported by any case, any statute or constitutional provision, and for good reason. It's illogical and would lead to absurd results. For example, puffery or advertisement that is less than truthful could be used by defendants to raise choice of counsel claims. As long as there is no outside interference, whether a defendant made a good choice, a well-informed choice, is not monitored by the Sixth Amendment right to choice of counsel. It just has to be his own choice. If this Court accepts defendant's theory, it would open the door to interference with defendant's personal choice. The purpose of the right to choice of counsel is to protect defendant's personal choice, not to oversee it, to regulate it, or even to protect defendant from his own choice. And defendant's theory would unnecessarily burden the trial judges who may be required to intervene in all cases where an attorney is being investigated or has been disciplined by the ARDC. However, Your Honors, Illinois courts have refused to place such an onerous burden on the trial court. In People v. Graham, this Court recently refused to place such a burden on the trial court in a similar case where, as appellate counsel stated, the defense counsel there stated that he had an ongoing fight with the ARDC on some matters that only dealt with technicalities. But, in fact, he had four ARDC cases. In one case, he was placed on probation. In another case, while his case was still on pretrial stage, the attorney was charged with violating the probation, and the ARDC hearing board recommended a two-year probation. This Court found the fact that the defendant was not aware of all that information was not a violation of his right to choice of counsel. Thus, contrary to defendant's position, Graham doesn't support his novel theory. In his brief, he used one sentence out of context in which the Court distinguished a Seventh Circuit case that dealt with the waiver of a right to jury trial. It didn't deal with the right to choice of counsel. However, the actual holding in Graham recognized that the Sixth Amendment protects defendant's own choice and does not monitor if it's a good choice or a well-informed choice. In fact, no court has ever accepted a claim that an attorney you hired can violate your Sixth Amendment right to choice of counsel. Defendant's novel theory is nothing more than an attempt to avoid proving the two-pronged test in Strickland. But Illinois courts have repeatedly refused to adopt the rule that disciplinary proceedings or sanctions are per se reversible error as long as the attorney is duly licensed to practice law. This Court should follow this long line of cases. However, even if this Court agrees with defendant's novel theory, this is not the case to adopt that theory. Defendant forfeited the issue and plain error only remedies claims that are settled, not novel ones. And again, this case doesn't even fit, actually fit defendant's novel theory. Again, when it is a people's position, when Mr. Reiner said that he was cleared of all charges, he was referring to Supreme Court Rule 772. Yeah, that is certainly not in the record. That's your supposition that that's what he's referring to. Right, and it's also not in the record that there was no conversations between defendant and trial counsel, right? And that's why this is an insufficient record to adopt defendant's novel theory. But we do know that under Rule 772, defendant which does not have a client notification, regardless of not having a client notification requirement, Mr. Reiner notified defendant in open court that he was on probation. So he didn't breach any fiduciary duty to defendant, and he didn't violate any ethical rule. The record just does not establish that Mr. Reiner was deceitful or that he affirmatively misinformed defendant. And again, defendant's claim is based on conjecture. We don't know what happened, what the conversations were before trial. And we don't know that if he was informed of the details of the ARDC proceedings, whether he would have made a different choice. That's not in the record. And because there is no support in the record, defendant improperly relies on facts set forth in Mr. Reiner's ARDC documentation. However, typically on appeal, such documents are considered in order to take judicial notice of an ARDC proceedings and its outcome. Here, the record already established that Mr. Reiner was subject to ARDC proceedings and that he was placed on probation. So those ARDC documents are irrelevant and not necessary. But it's improper for defendant to rely on the underlying facts to prove this claim that it was never raised below. Defendant had every opportunity to omit those ARDC documents at the evidentiary hearing and to raise his issue. However, he chose not to do so. And as such, the people asked that they be stricken from the brief. Your Honors, there was no outside interference with defendant's choice of counsel. He picked the – he exercised his right here. This Court should – Could you address before you sit down the ineffective assistance, the traditional ineffective assistance? Okay. With respect to the impeachment, that's an issue the defendant didn't raise below. And it's really – Well, he definitely raised ineffective assistance below. He – with regard to failing to impeach the officer with his arrest report, that's based on pure conjecture. The arrest – we don't – the arrest report is – the arrest report sets out facts that establish probable cause. It's not meant to establish every detail of the case. It's not meant to establish every detail of defendant's statement. Most likely, the full account of defendant's statement is in the supplemental report. And what supports this conclusion is that no one raised a Brady violation or a discovery violation. The complete statement is probably in the supplemental report. So it would have been a fruitless act to impeach an officer with the fact that the arrest report didn't contain all the details of defendant's statement because he would have been quickly rehabilitated and with a supplemental report.  What about the fact that Mr. Weiner testified in the post-trial hearing that his client never made an inculpatory statement? That's where the client's position. But Mr. Weiner wasn't – But the police testified that he did. Okay. You're saying – I'm saying Mr. Weiner testified in the hearing. And did Mr. Hall ever talk to you regarding a possible motion to suppress statements? Well, no. I don't believe Mr. Hall made a statement inculping himself with regard to the matters at hand. Right. Well, that establishes why there wasn't a motion to suppress because it was the defendant's position that he never made the statement. However, you can't – trial – defense counsel can't get up in the middle of a trial and say, excuse me, the defendant didn't make a statement. He said he didn't make a statement. What is at issue is trial counsel's performance. I mean, if the defendant didn't testify to state – to exercise his right to testify to state that I never made – Right. Never made a statement, there's no way to put that evidence in. I'm confused. I guess I'm confused as well. Okay. The police got up and testified that Mr. Hall did make an inculpatory statement. Yes. Right. It was memorialized in an arrest report and was second and second on the report. And it kind of sunk him. I mean, it was kind of the most devastating evidence against him. Yes. So his lawyer, rather than filing a motion to suppress, said he never made a – he – I mean, I don't understand that as a tactic. Well, it's interesting that post-trial counsel raised that issue, the defendant raised that issue. It hasn't been raised here. If you look at the evidence, there's no – there has to be a basis to suppress a statement, either an illegal arrest or a Miranda violation. The record does not support that. So that issue has been abandoned in the appeal because it would have been a fruitless act. I mean, there's no basis to suppress it. So trial counsel was faced with a daunting task because the case was overwhelming. He had to deal with, you know, an officer who was credible and – and he was at trial, as well as a defendant who confessed. But what he did do is during cross-examination, he got the officer to admit that he didn't – when he was interrogating the defendant, he didn't show the defendant the gun. And I know he didn't raise – he didn't address this during closing argument. However, this was tried in a bench trial before a seasoned judge. He didn't have to spell out all the facts and all the legal issues that his cross-examination set forth. So he did challenge the sufficiency of the evidence, and as well as whether the defendant was even eligible to be tried as a habitual criminal. So he was a zealous advocate, and he did subject the defendant's case to adversarial testing. And no, the defendant can't show prejudice. A basis argument that the officer may have somehow lied does not change the fact that the officer's testimony was credible and highly convincing, nor would it have overcome the fact the defendant admitted that the gun belonged to him. The defendant cannot show either prong of the Strickland standard, Your Honors. And so based on arguments presented today and those in our brief, the people asked this Court to affirm the defendant's conviction for being an armed habitual criminal. Thank you. I just have a few responses. With respect to the argument that this record is insufficient for this Court's review of the issue, the violation of Fabian's right to attorney of choice was complete when Mr. Wiener gave him the false information on the record, and that's the information that this Court needs to know. Any conversation that was held off the record would not unring that bell of untruth. That statement was made, and regardless of whether it had been discussed post-trial or not, the fact of the matter is that Mr. Wiener lied about his position with the ARDC. So for that reason, the record is sufficient for review. And just with respect to the argument that it would be illogical and need to observe results if this Court ruled in our favor and overburdened the trial courts, these types of structural errors are limited in nature. They relate to the defendant's constitutional rights relating to his choices as he presents a defense. There's only a handful of them. And I would hope that this type of situation wouldn't happen that often, that an affirmative lie would be told to the court. We have rules of responsibility that most attorneys abide by, so hopefully this would not be something that would be something that a trial court would commonly face. The trial court has to always ensure that the defendant's jury waiver is knowing and voluntary, that his right to self-representation is knowing and voluntary. Like I said, there's a handful of these rights that are associated with responsibilities to the trial court, and this would not overburden the trial court any more than it is right now with those other protections that courts are responsible to protect. And with respect to the ineffectiveness claims, defense counsel relies on potential supplemental police reports that defense counsel might have been faced with off the record. Again, we're talking about impeachment of the state's only witness. Perhaps the lawyer thought that that statement was beneficial to his client, that my client was really out there innocently, although he had a gun, but he was willing to cooperate with the police. I'm not that bad a guy. If you give me a break, I'll get you more guns. It happens all the time. Maybe the lawyer felt that this seasoned trial judge, if you'd describe him, may have felt, well, maybe the defendant's not some hardened criminal, and perhaps that ultimately influenced his ultimate sentence. That might be a theory that could be utilized in other cases. This is an unhabitual criminal case. Any kind of concession that his client possessed a weapon necessarily leads to a finding of guilt. Are you talking about the AK-47 statement? Oh, well, I don't see how an attack on the credibility of the defendant's statement at all should be avoided. I mean, I think that the only way that defense counsel could get around a finding of guilt is to... You're complaining about the fact that he didn't impeach the officer with the statement about the AK-47 that was not included in his police report, right? Correct. And I'm suggesting that a trial tactic may have been, it's not that bad. It's conveying to the trial court that my client is not some gangbanger out there shooting up the neighborhood. He was just out there, you know, I'm going to avoid the admission that I had the gun, but he's willing to cooperate with the police. He's an otherwise law-abiding citizen. I'm not going to touch it. I'm going to let it sit there for the judge to consider. I disagree. I think that it can only make it worse. It connects the defendant to even more weapons. And in an unconditional criminal case, I don't see how that could be sound trial strategy. I think both of those statements had the alleged confession in it that he possessed the weapon. That was the key piece of evidence against Fabian. If the court believed that statement, which it did, because he was found guilty. And it was put in the police report, so there was nothing impeaching about it. About that portion of it. Right. Correct. But the impeachment would go to impeach the officer's testimony that a statement was given at all. And defense counsel, many defense counsels do this. They impeach the officer about the circumstances surrounding the confession. And if something's different from the arrest report than was testified to, defense counsels often argue, well, that shows that this confession was fabricated. And it's not unheard of. And so that was really the only defense that defense counsel had in this case, was to attack the officer's credibility as it related to the existence of a statement at all. And for those reasons. As well as finding the gun. Everything. Yes. Right. So that was really the only defense that was a viable defense in this case, given the charges against the defendant and the evidence presented by the state. And finally, Mr. Wiener's comments at the post-trial motion are irrelevant with respect to whether or not we raised a motion to quash and suppress issue on appeal. But they demonstrate negligence. They demonstrate that he did not know the facts of this case. He didn't even know that the defendant, or at least a few months after the finding, didn't even remember or know or recognize the defendant allegedly made a statement implicating himself. And so, again, those statements at the post-trial motion cannot support a sound trial strategy. Thank you. Thank you. As usual, very excellent job on both sides. And you will hear from us shortly. We'll take this under advice.